Lamont AUKLAND, Plaintiff–Appellant,

v.

Larry G. MASSANARI, Acting Commissioner of Social Security, Defendant–Appellee.

No. 99–35943.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 14, 2001

Filed July 23, 2001

Jeannette Laffoon and Elli Halpern, Elie Halpern & Associates, Olympia, Washington, for the appellant.

Victoria B. Chhagan, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for the appellee.

Before: B. FLETCHER, BRUNETTI, and FISHER, Circuit Judges.

BRUNETTI, Circuit Judge:

Lamont Aukland ("Aukland") appeals the district court's summary judgment affirming the Commissioner of Social Security's (the "Commissioner") termination of his disability insurance benefits. Diagnosed with leukemia in 1991, the Commissioner awarded Aukland disability insurance benefits. Aukland was found to be "not disabled" as of April 1, 1995, after a determination that his disability had improved. Benefits were terminated as of June 30, 1995. Aukland alleges that he continues to be disabled by other conditions caused by side-effects of the leukemia and its treatment.

## A. Standard of Review

A district court's order upholding the Commissioner's denial of benefits is

reviewed de novo. *See Harman v. Apfel,* 211 F.3d 1172, 1174 (9th Cir.2000). This court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *See Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir.1999).

■ Substantial evidence is more than a mere scintilla, but less than a preponderance. *See id.* at 1098. "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan,* 981 F.2d 1016, 1018 (9th Cir.1992). But the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan,* 143 F.3d 1240, 1243 (9th Cir. 1998). Rather, a court must "consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993).

## B. Analysis

The ALJ determined that Aukland can perform the full range of light and sedentary work, and therefore is not disabled. Aukland contends that the ALJ committed several legal errors that resulted in a denial of disability benefits that was not based on substantial evidence. He does not dispute that his leukemia has gone into remission and that this condition has medically improved. Rather, he argues that the treatment and medication used to combat the disease still render him unable to engage in any substantial gainful activity.

After reviewing the record, and for the reasons stated in the magistrate judge's recommendation to the district court, we agree with the district court's decision that there is not substantial evidence that Mr. Aukland can perform the full range of *light* work. We also agree that substantial evidence is lacking to support a finding of severity for Aukland's claims of wrist problems, cataracts, frequency of respiratory infections, and forgetfulness.

■ However, we disagree with the magistrate judge's conclusion that substantial evidence supported the ALJ's determination that Aukland is capable of performing the full range of sedentary work. Because an ALJ may rely solely on the Medical–Vocational Guidelines (the "grids") only when a claimant can perform the full range of applicable work, we conclude that the ALJ erred in failing to obtain the testimony of a vocational expert.

■ Under 20 C.F.R. § 404.1567, sedentary work involves:

> lifting no more than 10 pounds at a time, and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. Social Security Ruling 83–10 defines "occasionally" as "occurring very little up to one-third of the time." "[P]eriods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.* In addition, the Commissioner has expressly stated that a person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work. SSR 83–12 ("In some disability claims, the medical facts lead to an assessment of [Residual Functional Capacity] which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a

**1036**

time, but must then get up and stand or walk for a while before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work."). Pursuant to these rulings and regulations, it is true that "to be physically able to work the *full range* of sedentary jobs, the worker must be able to sit through most or all of an eight hour day." *Tackett,* 180 F.3d at 1103 (emphasis added). The ALJ found that Aukland is able to perform the full range of sedentary jobs, and then applied the grids in arriving at a final determination of "not disabled."

Aukland asserts that the ALJ's application of the grids was improper. "The ALJ may rely on the grids alone to show the availability of jobs for the claimant 'only when the grids accurately and completely describe the claimant's abilities and limitations.'" *Tackett,* 180 F.3d 1094; *see also,* 20 C.F.R. pt. 404, subpt. P, app. 2, rule 200(e). "A non-exertional impairment, if sufficiently severe, may limit the claimant's functional capacity in ways not contemplated by the guidelines. In such a case, the guidelines would be inapplicable." *Desrosiers v. Sec'y of Health and Human Servs.,* 846 F.2d 573, 577–78 (9th Cir.1988). The Commissioner has ruled that in circumstances such as Aukland's, where a claimant is only qualified for unskilled jobs and is unable to sit for prolonged periods, the services of a vocational expert are required. SSR 83–12 ("There are some jobs in the national economy-typically professional and managerial ones-in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work

processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [Vocational Specialist] should be consulted to clarify the implications for the occupational base.").

In *Tackett,* this court considered use of the grids in the context of a non-exertional limitation where the treating physician and the ALJ's own medical expert recommended "[n]o prolonged work in a single position, frequent position changes as needed." *See Tackett,* 180 F.3d at 1102–03. Both physicians expressed the opinion that Tackett's knee problems required him to "change positions, shift his body, walk, or stand about *every half hour.*" *See id.* at 1102. This court determined that this limitation constituted "a significant non-exertional limitation not contemplated by the grids." *See id.* at 1103–04. Moreover, we stated that "[i]t is easy to imagine the problems this non-exertional limitation would cause in many sedentary jobs which require sitting during most or all of an eight hour day such as some assembly line jobs, or jobs as a phone operator or dispatcher." *Id.* at 1104. Because of this significant non-exertional limitation, this court remanded the case to the Commissioner, directing that testimony of a vocational expert be taken. *See id.*

Likewise, Aukland's treating physician, Dr. Takasugi, expressed in a letter one week prior to the hearing that

[Aukland's] ability to work has been affected by chronic low back pain with radiation into his right leg and foot. Pain is attributed to degenerative disc disease. He has seen on [sic] orthopedist, Dr. Alan Barronian, in the past and conservative measures were recom-

mended at that time. *Mr. Aukland has difficulty with standing or sitting for long periods because of his back disease.* (emphasis added). The ALJ recognized that Aukland's back impairment is severe, and acknowledged Dr. Takasugi's opinion regarding the back pain. However, the ALJ concluded that Aukland "is capable of performing a full range of ... sedentary level exertion." Although Dr. Takasugi's opinion is not as detailed as that given by the physicians in *Tackett,* it nonetheless provided the ALJ with evidence of a significant non-exertional limitation. Unless discredited, a medical opinion regarding Aukland's inability to sit or stand for prolonged periods would require the assistance of a vocational expert in deciding whether there are a significant number of jobs in the national economy that Aukland can do since most sedentary jobs require sitting for most or all of the day. *See Tackett,* 180 F.3d at 1103.

 The opinion of a treating physician, such as Dr. Takasugi, is given greater weight than the opinions of other physicians. *See Smolen v. Chater,* 80 F.3d 1273, 1285 (9th Cir.1996). ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians."). In rejecting Dr. Takasugi's opinion, the ALJ failed to "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). After acknowledging Dr. Takasugi's opinion, the ALJ stated that "the evidence does not support a sig-

nificant restriction [on standing or sitting] and [Aukland's] activities of daily living is within the realm of light level exertion as will be discussed below." However, the ALJ did not discuss this conclusion in any further detail and therefore failed to set forth the requisite specific and legitimate reasons for rejecting Dr. Takasugi's opinion based on substantial evidence in the record. Because the ALJ's rejection of Dr. Takasugi's opinion was improper, his reliance on the grids—which presupposed a proper assessment of Aukland's disability—was also improper. Government's counsel, at oral argument, even conceded that remand for the purpose of seeking the opinion of a vocational expert may be appropriate in this case.[1]

## C. Conclusion

We remand to the Social Security Administration for reconsideration of Aukland's disability status after April 1, 1995. Since the grids do not accurately and completely describe Aukland's limitations, the ALJ must consider testimony from a vocational expert in determining whether Aukland is able to engage in any substantial gainful activity.

**REVERSED and REMANDED.**

---

1. The ALJ also improperly found that Aukland's complaints lacked credibility "to the extent alleged for the reasons stated in this decision." An ALJ may not reject a claimant's testimony without specifically identifying the testimony she or he finds not to be credible and explaining what evidence under-

mines the testimony. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). The ALJ failed to do this. Moreover, the evidence upon which the ALJ relies to reject a claimant's testimony must be substantial. *Id.* Substantial evidence does not support the ALJ's negative credibility determination.